***NOT FOR PUBLICATION**

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

_____
                                        :
PAUL KAMINSKI, et al.,                  :
                                        :   Civil Action No. 10-2883 (FLW)
          Plaintiffs,                   :
                                        :
     vs.                                :
                                        :        **OPINION**
TOWNSHIP OF TOMS RIVER, et al.,         :
                                        :
          Defendants.                   :
_____ :

**WOLFSON, United States District Judge:**

Plaintiffs Paul Kaminski, Stephen J. Russell, Frank L. Palino, and Richard T. Ross (collectively, "Plaintiffs"), initiated this § 1983 action against defendants, International Association of Chiefs of Police ("IACP"), the Township of Toms River, Michael Mastronardy, Vincent Pedalino, Stephen Gerding, Raymond Maloney, William Morsch, Michael Miller, Christopher Dudzik, Christopher Anderson, Patrick Dellane, Shaun O'Keefe, Jeffrey Lennox, Michael Brosnan, Brian Nesta, Gregory Hopper (collectively, "Defendants"). This action arises out examinations given to Toms River's police officers for promotional purposes. Plaintiffs, who were police officers at the time of the examinations, allege that Defendants gave preferential treatment to select examinees, which resulted in Plaintiffs being ineligible for certain promotions in violation of their constitutional rights. Presently before the Court is a motion to dismiss Counts one, two, five and seven of the Complaint and in the alternative, a motion for a more definitive statement, filed solely by defendant IACP. For the reasons that follow, the Court dismisses Counts one, two, five and seven against IACP; and Plaintiffs are directed to provide a more definite

statement with respect to Count six.

## BACKGROUND

Because IACP moves to dismiss pursuant to Rule 12(b)(6), the Court will assume the allegations in the Complaint as true. Moreover, the Court will only recount those allegations pertinent to resolve the instant dispute. In 2006, Toms River, through its police department, administered promotional examinations to police officers. Compl. ¶ 27. The examinations were used to determine which police officers would be promoted to the rank of Sergeant or Lieutenant. Id. The examinations were approved by the Toms River Township Council, and the township entered into a contract with IACP to administer the examinations. Id. at ¶ 28. The contract between Toms River and IACP (the "IACP Contract") specifically delineated the purpose of IACP's involvement in the examination process:

> [t]he Association will conduct a job analysis and develop and administer a written examination and in-basket exercise for the purpose of assisting the Agency in evaluating individuals to serve as Sergeant in the [Dover] Township Police Department.[1] The Association will conduct job analysis and develop and administer a written examination, and oral presentation exercise, and in-basket exercise for the purpose of assisting the Agency in evaluating individuals to serve as Lieutenant in the Dover Township Police Department. The Association will also provide trained evaluators, data collection and computation for employee evaluations, and association reports.

Id. at ¶ 29; The IACP Contract dated December 1, 2006 at ¶ 2. Moreover, the contract also specifies that IACP will "[i]n all matters pertaining to [the contract]" act "as an independent contractor and neither the [IACP] nor any officer, employee or agent of the [IACP] be deemed an employee of [Toms River]." IACP Contract at ¶ 9.

---

[1] Toms River Township was previously known as Dover Township. Consequently, any reference to Dover Township in this Opinion is, rather, Toms River.

The Sergeant's examination, which was announced on July 26, 2006, consisted of four (4) sections. Compl. ¶ 31. The first section was a written section, comprised of one-hundred (100) multiple-choice questions. Id. at ¶ 32. This portion was worth a total of 35% of the examination, and was objectively graded. Id. The multiple-choice questions were both written and graded by IACP. Id. at ¶ 33. "Longevity" counted for the second portion of the examination, and carried a weight of 10% of the total exam. Id. at ¶ 34. For every month of service, 0.0555 points were added to the applicant's score, for a maximum number of 10 points. Id. Half of these points were added to the multiple-choice section, and the remaining half were added to the final score. Id. Fifty-one Toms River police officers took the Sergeant's examination on December 3, 2006. Id. at ¶ 35. Only those examinees whose scores were in the top 25 were permitted to take the remaining portions of the Sergeant's exam. Id. Plaintiffs were among those examinees who scored in the top 25. All other examinees were eliminated from taking the other sections of the exam. Id.

The third section of the Sergeant's Exam was an "in-basket" written exam. Id. at ¶¶ 36, 39. This portion was comprised of hypothetical-situational questions to which each examinee gave a response. Id. ¶¶ 36-37. This section accounted for 35% of the total exam. Id. at ¶ 36. A portion of these questions were allegedly written by defendants Mastronardy and Pedalino, contrary to the IACP Contract. Id. at ¶ 38. In the fourth portion of the exam, the records of each examinee-police officer were reviewed by three evaluators. This final portion of the examination was worth 20% of the total exam. Id. at ¶ 40. Lieutenants Steven Gerding and Mitch Little comprised the evaluator-panel, with an alternate third panelist selected by the examinee. Id. Plaintiffs Kaminski,

Russell, and Palino each chose Sergeant Wetzel as the alternate evaluator. Id. The evaluation section of the Sergeant's exam was scored by the panel, and not by IACP. Id. at ¶ 42.

Seven out of the twenty-six officers who passed the multiple-choice portion of the examination were promoted to the position of Sergeant; Plaintiffs were not among the officers who were promoted. Id. at ¶ 45. The official results of the examinations were never published. Furthermore, at the time the examinations were administered, the officers who took the exam were unaware that the manner in which the examination was administered was allegedly inappropriate. Id. at ¶ 46. After the exam, Plaintiffs learned that scores had been allegedly manipulated by certain senior officers; seniors officers were upwardly adjusting the scores of those examinees favored by both the Chief and the Deputy Chief. Id. at ¶¶ 43, 51. The gist of Plaintiffs' claim is that the Sergeants exam was "manipulated and tainted to favor certain police officers" in violation of Plaintiffs' constitutional rights. Id. at ¶ 51.

Subsequently, Plaintiffs filed a seven-count Complaint against Defendants. Specifically against IACP, Plaintiffs assert three separate counts pursuant to § 1983, i.e., Counts one, two and five. In addition, Plaintiffs assert a count for breach of contract, i.e., Count seven, and an unidentified cause of action in Count six. IACP moves to dismiss Counts one, two and five, contending that it is not a state actor acting under color of state law for the purposes of § 1983. IACP also moves to dismiss Count seven because it claims Plaintiffs do not have standing to bring a breach of the IACP Contract. In the alternative, IACP asks the Court to direct Plaintiffs to file a more definite statement pursuant to Fed. R. Civ. P. 12(e).

4

## DISCUSSION

**I.      Motion to Dismiss**

    **A.      Standard of Review**

The Federal Rules of Civil Procedure provide that a complaint "shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a).  The purpose of a complaint is "to inform the opposing party and the court of the nature of the claims and defenses being asserted by the pleader and, in the case of an affirmative pleading, the relief being demanded." 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1182 (3d ed. 2004).

In reviewing a motion to dismiss for failure to state a claim under 12(b)(6), a Court must take all allegations in the complaint as true, viewed in the light most favorable to the plaintiff "and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation and quotations omitted).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the Supreme Court "retired" the language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Twombly, 550 U.S. at 561 (quoting Conley, 355 U.S. at 45-46).  Rather, the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level." Id. at 555.  The Third Circuit summarized the pleading requirement post-Twombly:

> The Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of 'the necessary element.'

Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556).

In affirming that the Twombly standard applies to all motions to dismiss, the Supreme Court recently further clarified the 12(b)(6) standard. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." Iqbal, 129 S.Ct. at 1950. Accordingly, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. In short, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

The Third Circuit recently reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." West Penn Allegheny Health System, Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010). This means that, "[f]or example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." Id. That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." Id. (quoting Iqbal, 129 S.Ct. at 1953).

### B.    Counts One, Two and Five - 42 U.S.C. § 1983

With respect to Counts one, two and five, IACP argues that it is not subject to § 1983 liability because it is not a state actor acting under color of state law. Indeed, it is well settled that as a threshold matter, in order to state a claim for relief under § 1983, Plaintiffs must allege that IACP acted under color of state law and deprived them of a right established by the Constitution or the laws of the United States. See Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 907 (3d Cir. 1997). As explained below, the Court finds that Plaintiffs have failed to meet their burden of alleging that IACP is a state actor.

The Fourteenth Amendment provides that "no State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. This particular Amendment governs only state action, not the actions of private citizens or organizations. Rendell-Baker v. Kohn, 457 U.S. 830, 837-38 (1982) (citing, inter alia, Civil Rights Cases, 109 U.S. 3, 11 (1883))  Section 1983 subjects to liability those who deprive persons of federal constitutional or statutory rights "under color of any statute, ordinance, regulation, custom, or usage" of a state. See 42 U.S.C. § 1983; Leshko v. Servis, 423 F.3d 337, 339 (3d Cir. 2005). Actions relating to "under color of law" are the equivalent of "state action" under the Fourteenth Amendment. Rendell-Baker, 457 U.S. at 838; Benn v. Universal Health Sys., Inc., 371 F.3d 165, 169 n.1 (3d Cir. 2004). Accordingly, to state a claim of liability under § 1983, Plaintiffs must allege that they were deprived of a federal constitutional or statutory right by a state actor. Leshko, 423 F.3d at 339.

While Supreme Court cases under the Fourteenth Amendment draw no "simple line" between states and private persons, Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,

531 U.S. 288, 295 (2001), the principal question at stake is whether there is "such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Id. (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351(1974)). State action cases broadly divide into two factual categories. See Brentwood Acad., 531 U.S. at 296. The first category involves an activity that is significantly encouraged by the state or in which the state acts as a joint participant.  See Blum v. Yaretsky, 457 U.S. 991 (1982) (holding state action to be present where the state provides "significant encouragement, either overt or covert" for the activity); Lugar v. Edmondson Oil Co., 457 U.S. 922, 941 (1982) (holding state action to be present where private citizen employed challenged state prejudgment attachment process, thus participating in the state's action). Determining state action requires tracing the activity to its source to see if that source fairly can be said to be the state.  The question is "whether the fingerprints of the state are on the activity itself." Leshko, 423 F.3d at 340.  In adhering to this approach, "facts are crucial." Crissman v. Dover Downs Entm't Corp., 289 F.3d 231, 234 (3d Cir. 2002) (en banc).

The second category of cases involves an actor that is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management. See Pennsylvania v. Bd. of Dir. of City Trusts of Philadelphia, 353 U.S. 230, 231 (1957) (per curiam) (holding private organization to be state actor where the organization was controlled by a state agency); West v. Atkins, 487 U.S. 42, 56 (1988) (holding private doctor to be state actor where he performed a function traditionally and exclusively reserved to the state); see also Burton v. Wilmington Parking Auth., 365 U.S. 715, 724 (1961) (holding private business to be state actor where there were "mutual benefits" between the state and the business). "Determining state action

in this category of cases consists of asking whether the actor is so integrally related to the state that it is fair to impute to the state responsibility for the action." Leshko, 423 F.3d at 340. The relevant inquiry here is "whether the state so identifies with the individual who took the challenged action that it can be deemed that the state's fingerprints to have been on the action." Id.

Here, Defendant first argues that IACP is a state actor for purposes of § 1983 because it had a contractual relationship with Toms River. This argument is easily disposed of – the Supreme Court has unequivocally held that "acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." Rendell-Baker, 457 U.S. at 841. In that connection, "a private entity [performing] a function which serves the public does not make its acts state action." Id. at 842. Thus, the mere fact that IACP was performing an act pursuant to an agreement with Toms River does not transform IACP – a private entity – into a state actor. See Robert S. v. Stetson Sch., Inc., 256 F.3d 159, 165 (3d Cir. 2001). Rather, the Court must trace IACP's activity to its source to see if that source fairly can be said to be the state. Leshko, 423 F.3d at 340.

Next, Plaintiffs argue that IACP is a state actor because it performed acts while cloaked in state authority. In so arguing, Plaintiffs reason that the Court should apply the two-part test devised in Lugar. However, pursuant to Third Circuit precedent, the determination of state action starts by aligning the case at hand with the Supreme Court case most factually akin to it. Lashko, 423 F.3d at 339. Lugar dealt with a private party's joint participation with state officials in the seizure of disputed property. Lugar, 457 U.S. at 924-25. In that case, the Supreme Court held that the constitutional requirements of due process apply to garnishment and prejudgment attachment procedures whenever state officers act jointly with a private creditor in securing the property in

dispute and if the challenged conduct of the creditor constitutes state action, then that conduct is also action under color of state law. Id. at 937, 941-42. Clearly, Lugar does not involve a relationship, such as here, where a private entity enters into a contract with the state, and as such, Lugar's test of state action does not apply to the facts of the instant case. Instead, the Court finds the test espoused in Rendell-Baker, a case involving independent contractors, to be the appropriate test. Indeed, Plaintiffs' argument that IACP was acting under the color of state law because it had a "symbiotic relationship" with Toms River is reminiscent of that made by the plaintiffs in Rendell-Baker.

In Rendell-Baker, five employees of a Massachusetts private school brought a § 1983 suit against their employer, the New Perspectives School, and the school's director, alleging that they had been discharged for speech protected by the First Amendment. The crucial issue before the Court was whether the director and the school acted under color of state law at the time plaintiffs were discharged from their employment. Rendell-Baker, 457 U.S. at 831.

New Perspectives dealt exclusively with students who experienced difficulty completing public high school as a result of behavioral problems, substance abuse, and/or other special needs. Id. at 832. Nearly all of the students which comprised the school's student body were referred by public school committees or state agencies. Moreover, approximately 90% of the school's operating budget derived from public funds. Id. Under applicable Massachusetts law, all students with special needs were entitled to a suitable public education under the supervision of both the state and local governments. Consequently, public school committees in Massachusetts had a statutory obligation to identify all children who had special educational needs, and to prepare an individualized education program for each of them. The state statute provided that public school

10

committees could contract with private schools to implement these educational programs. Id. at 833. As such, several public school committees and one state agency entered into contracts with New Perspectives, under which New Perspectives accepted referred individuals as students and the public entities paid tuition in return. Id.

Under those circumstances, the Supreme Court held that New Perspectives and its superintendent did not act under color of state law when discharging the plaintiffs. In so holding, the Court found that

> [t]he school . . . is not fundamentally different from many private corporations whose business depends primarily on contracts to build roads, bridges, dams, ships, or submarines for the government. Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts.

Id. at 840-41. Rendell-Baker makes clear that a state contractor and its employees are not state actors simply because they are carrying out a state-sponsored program or activity and the contractor's financial compensation derives from the state's coffers. Moreover, the fact that the activity performed is a public function does not render the contractor and its employees state actors. For the nature of the contractor's activity to make a difference in the analysis, the function performed must have been "traditionally the *exclusive* prerogative of the State." Id. at 842 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 353 (1974)); see also Black by Black v. Indiana Area Sch. Dist., 985 F.2d 707 (3d Cir. 1993) (the Third Circuit, applying Rendell-Baker, unanimously held that "[w]hile [defendants] were carrying out a state program at state expense, they were not performing a function that has been 'traditionally the exclusive prerogative of the state' and there was no state regulation that 'compelled or even influenced' the conduct which is alleged to have violated plaintiffs' constitutional rights.").

The Supreme Court explained that the nature of the contractor's activity in Rendell-Baker did not make the contractor in question a state actor because the policy choice of Massachusetts "in no way [made] these services the exclusive province of the State." Id. at 842. In addition, while the Court acknowledged that schools in Massachusetts, particularly New Perspectives, were heavily regulated, this fact is of no consequence as the challenged discharge was "not compelled or even influenced by any state regulation." Rendall-Baker, 457 U.S. at 841. The Court also rejected the plaintiffs' contention that there was a "symbiotic relationship" between the school and the state, because it found that the state did not profit from the plaintiffs' allegedly discriminatory conduct.[2] Id. at 843.

In this case, it has not been alleged in the Complaint, nor can the Court find, that IACP's function of creating or administering a police promotional exam is traditionally the exclusive prerogative of the state; while IACP administered an exam at state expense and IACP was compensated for its services, Plaintiffs have not alleged that there were any state regulations that would have compelled or influenced IACP's conduct. Furthermore, IACP does not make the ultimate decision of promoting police officers; it simply created a set of objective questions and administered the exams. In fact, as alleged, Toms River Police Department, including its Chief and Deputy Chief, made the final decisions on promotion.[3] Without those crucial components, just

---

[2] In reaching this conclusion, the Supreme Court relied on its decision in Burton v. Wilmington Parking Auth., 365 U.S. 715 (1961). In Burton, the Court held that the refusal of a restaurant located on public property to serve black customers constituted state action. The Court stressed that the restaurant was located on public property and that the rent from the restaurant contributed to the support of that property. Id. at 723. In that respect, the Court concluded that this showed that the state profited from the restaurant's discriminatory conduct and viewed this as support that the state should be charged with the discriminatory actions.

[3] Indeed, Plaintiffs do not allege that IACP was the decision maker, rather Plaintiffs' allegations of wrongdoing stem from conduct by certain senior officers of Toms River's police department – not IACP – who were upwardly adjusting the scores of those

as Rendell-Baker made clear, an independent contractor is not a state actor simply because it is carrying out a state-sponsored activity and the state compensates the contractor. Rendell-Baker, 457 U.S. at 840-41. As alleged, IACP created certain sections of the exams, administered the exams, and selected the evaluators who would comprise the evaluation panel; those actions taken by IACP were in compliance with the provisions of the contract.

Plaintiffs also rely on Burton in arguing that IACP had a symbiotic relationship with Toms River. However, the Court finds this argument unavailing. Indeed, there is no allegation that any defendant – let alone IACP – profited from the alleged manipulation of the examinations, or that there was any financial benefit conferred upon Toms River by virtue of IACP's contractual duties. See Boyle v. Governor's VOAC, 925 F.2d 71, 76 (3d Cir. 1991) (Burton turned on the fact that "the state had many obligations and responsibilities regarding the operation of the restaurant; mutual benefits were conferred; and the restaurant operated physically and financially as an integral part of a public building devoted to a public parking service."(quotations omitted)). As in Rendell-Baker, the allegations of the Complaint here reveal that the cooperation between IACP and Toms River only involved the execution of the IACP Contract. In that regard, IACP's "fiscal relationship with the State is not different from that of many contractors performing services for the government." Rendell-Baker, 457 U.S. at 843.

Finally, Plaintiffs analogize the facts of this case to those in West. In that case, the Supreme Court found that a physician, employed by the state to provide medical care to inmates in state prison, was a state actor for the purposes of § 1983 liability. The Court reasoned that the

---

examinees favored by both the Chief and the Deputy Chief. Id. at ¶¶ 43, 51. While there are unspecific and general allegations that IACP knew that the grades of the examinees were being manipulated, there are no allegations that IACP took part in the alleged manipulation of the examinations or preferential selection of the candidates who received promotions.

physician with whom the state had contracted to provide such services "function[ed] within the State system." West, 487 U.S. at 55. As such, because providing medical care to inmates were within the exclusive province of the state, the contractor physician's actions can be fairly attributed to the state. Id. at 55-56. In that regard, as this Court has already found, since it has not been alleged or suggested that IACP's function of administering the police exam is traditionally the exclusive prerogative of the state, Plaintiff's reliance on West is misplaced.

Accordingly, in light of the foregoing, the Court finds that IACP is not a state actor for the purposes of § 1983, and thus, Counts one, two and five against IACP are dismissed.

### C. Count Seven - Breach of Contract

In Count seven, Plaintiffs allege that IACP breached the IACP Contract by "allowing the Defendants Chief and Deputy Chief to produce questions for the in-basket portion of the exam and allowing the Defendants Chief and Deputy Chief to review portions of the exam rather than forwarding all portions of the exam directly to the IACP." Compl. at ¶ 136. There is no dispute here that Plaintiffs are not signatories to the IACP Contract. As such, in order for Plaintiffs to have standing to bring a breach of contract claim, they must be intended third-party beneficiaries under the IACP contract.

In New Jersey, a third party can maintain an action based on a contract only if it is a "person for whose benefit the contract is made." N.J.S.A. 2A:15-2. This requires that "the contracting parties have expressly intended for that third-party to receive a benefit which might be enforced in the courts." Washington v. Corr. Med. Servs., No. 05-3715, 2006 WL 1210522, at *5 (D.N.J. May, 1, 2006) (quotations omitted); GE Capital Mortg. Services, Inc. v. Privetera, 346 N.J. Super. 424, 434 (App. Div. 2002). "The test for determining whether a third-party has an

14

actionable right under contract is whether contracting parties intended that a third party should receive a benefit which might be enforced in the court." GE Capital, 346 N.J. Super at 434.  In other words, "[t]o qualify as a third-party beneficiary, it must be shown that the contract was 'made for the benefit of that third party within the intent and contemplation of the contracting parties'." Grand St. Artists v. Gen'l Electric. Co., 19 F.Supp.2d 242, 253 (D.N.J. 1998)); compare Swiss Reinsurance America Corp. v. Airport Indus. Park, Inc., 325 Fed. Appx. 59, 64 (3d Cir. 2009)(where the Third Circuit found that the non-signatory party was an intended beneficiary of the contract as the contractual provisions specifically defined the word "Surety" to include "reinsurers").

Importantly, a contract is not enforceable by a merely incidental third-party beneficiary. See GE Capital, 346 N.J. Super at 434 ("If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing."); see E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 196 (3d Cir. 2001) (stating that "if it was not the promisee's intention to confer direct benefits upon a third party, but rather such third party happens to benefit from the performance of the promise either coincidentally or indirectly, then the third party will have no enforceable rights under the contract" because the third party is nothing "more than an incidental third party beneficiary"); Prinzivalli v. Aruba Phoenix Beach Resort, No. 06-6004, 2008 WL 802331, at *2 (D.N.J. Mar. 20, 2008) ("Without this intention to confer a benefit, the third party just so happens to benefit and he or she will have no contractual rights under the agreement.") (citing Reider Communities, Inc. v. N. Brunswick Twp., 227 N.J. Super. 214, 546 A.2d 563, 567 (App. Div. 1988)).  Unlike an intended beneficiary, an incidental beneficiary is a party that benefits from a contract between two other parties but is not

15

itself a party to that contract and is not intended by the parties to the contract to have enforcement rights. 13 Samuel Williston & Richard A. Lord, A Treatise On The Law Of Contracts § 37:7 (4th ed. 2000 & Supp. 2002). Accordingly, a court must examine the contract's terms and the surrounding circumstances to discern whether the contracting parties intended to confer benefits on the non-signatory party. Prinzivalli, 2008 WL 802331 at *2.

In addition to pleading that Plaintiffs are the intended third-party beneficiaries under the IACP Contract, Plaintiffs must also plead that they materially changed their positions in reliance on the terms of the contract. Meadowlands Nat'l Bank v. Court Dev. Inc., 192 N.J. Super. 579, 582 (App. Div. 1983)(citing Restatement (Second) of Contracts §§ 302, 304, 311); Material Techs. v. Carpenter Tech. Corp., No. 01-2965, 2004 U.S. Dist. LEXIS 28892, at *46 (D.N.J. Dec. 14, 2004).

In the present case, Plaintiffs contend that they are the intended beneficiaries of the IACP Contract because the contract specifically set forth that it was formed for the purpose of evaluating and promoting police officers. In that regard, Plaintiffs reason that because they were the subject of the contract, they are the intended third-party beneficiaries. The Court rejects this position. Indeed, the inquiry here is whether the contracting parties – i.e., Defendants – intended that Plaintiffs should receive a benefit which might be enforced in the courts. See Broadway Maint. Corp. v. Rutgers State Univ., 90 N.J. 253, 259-60 (1982). In the Complaint, except for a conclusory statement, there are simply no allegations that would lead the Court to find that Plaintiffs are the intended beneficiaries of the IACP Contract. Contrary to Plaintiffs' position, the fact that police officers were referenced in the IACP Contract is not dispositive. The contract did not confer any benefits upon Plaintiffs. Indeed, a reading of the Complaint and the contractual

language reveals that Plaintiffs merely benefitted – i.e., promotion – by the performance of the contract; this is insufficient to establish that Plaintiffs are the intended beneficiaries. See also Herbert v. Corby, 124 N.J.L. 249, 254 (Law Div. 1940) ("In order that a person not party to a contract may maintain an action thereon, it must appear that the contract was made for him. It is not sufficient that he be merely benefitted by its performance."). Moreover, Plaintiffs here simply failed to allege that they have materially changed their positions in reliance on the terms of the contract. Absent these allegations, Plaintiffs were only incidental third-party beneficiaries. Consequently, the Court dismisses Count seven against IACP.

**II.     Motion for a More Definite Statement**

Having dismissed Counts one, two, five and seven of the Complaint, the only remaining cause of action against IACP is Count six, wherein Plaintiffs allege that Defendants, including IACP, made "material misrepresentations to Plaintiffs regarding the nature of the promotional exams by claiming that the exams were being graded fairly when in fact the results were being manipulated." Compl. at ¶ 126. IACP asks the Court to instruct Plaintiffs to provide a more definite statement as to Count six.

Federal Rule of Civil Procedure 12(e) permits a party to move for a more definite statement of a pleading to which a responsive pleading is allowed when the pleading is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). The prevailing standard to grant a motion for a more definite statement is "when the pleading is 'so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself]." Sun Co. v. Badger Design & Constructions, Inc., 939 F.Supp. 365, 368 (E.D. Pa. 1996); see Lunderstadt v. Colafella, 885 F.2d 66, 68-60 (3d Cir. 1989).

17

Here, in Plaintiffs' Complaint, each of the Counts specifically sets forth the cause of action, except for Count six. In Count six, Plaintiffs alleges that "Defendants . . . knew that the promotional exams were not being graded fairly but that the results were being manipulated." Compl. at ¶ 127. Plaintiff further alleges that they "relied on the fairness of the exams when they took the exams" to their detriment. <u>Id.</u> at ¶¶ 129-30. Having examined these allegations, the Court finds that it is not clear as to what theory of liability or the basis for the cause of action Plaintiffs intend to assert against IACP in Count six. Because of these unspecific and generalized allegations, it would be difficult for IACP to answer in good faith or provide affirmative defenses to raise in its answer. Accordingly, pursuant to Rule 12(e), the Court instructs Plaintiffs to provide a more definite statement with respect to Count six.

Date: April 14, 2011                               /s/ Freda L. Wolfson
                                                   The Honorable Freda L. Wolfson
                                                   United States District Judge