**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| PAUL KAMINSKI, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action Nos. 10-2883, 11-4605 (MAS) (TJB) |
| | : | |
| TOWNSHIP OF TOMS RIVER, *et al.*, | : | **MEMORANDUM OPINION** |
| | : | |
| Defendants. | : | |

**SHIPP, District Judge**

These two actions arise out of examinations administered in 2006 and 2011 to Toms River's police officers for promotional purposes. Arising out of the 2006 examinations, Plaintiffs Paul Kaminski, Stephen J. Russell, Frank T. Palino, and Richard T. Ross (collectively, "Plaintiffs") filed an Amended Complaint against various Defendants, including the Township of Toms River ("Toms River"),[1] Michael Mastronardy, Vincent Pedalino, and Steven Gerding.[2] (Am. Compl., No. 10-2883, ECF No. 40) (*Kaminski I.*) In a separate matter, stemming from the 2011 examinations, Plaintiffs Kaminski, Russell, and Palino filed a Second Amended Complaint ("SAC") against various Defendants, including Toms River and Defendant Mastronardy.[3] (SAC, No. 11-4605, ECF No. 30) (*Kaminski II.*)[4]

---

[1] In 2006, Toms River was known as the Township of Dover, but the name was subsequently changed. For simplicity, the Court will only refer to the township as "Toms River."

[2] Defendants also include the police officers who were promoted or eligible for promotion as a result of the 2006 examinations: Raymond Maloney, William Morsch, Michael Miller, Christopher Dudzik, Christopher Anderson, Patrick Dellane, Shaun O'Keefe, Jeffrey Lennox, Michael Brosnan, Brian Nesta, and Gregory Hopper. Plaintiffs also name John Does 1-5.

[3] Defendants also include the police officers that were promoted or eligible for promotion as a result of the 2011 examinations: Guy Maire, Theodore Grob, Ronald Sermarini, Edmund Mooney, Ralph

The present matter comes before the Court upon Defendants' five Motions for Summary Judgment. (Mastronardy/Pedalino S.J. Mot., *Kaminski I*, ECF No. 94; Toms River S.J. Mot., *Kaminski I*, ECF No. 96; Gerding S.J. Mot., *Kaminski I*, ECF. No. 97; Mastronardy S.J. Mot., *Kaminski II*, ECF No. 41; Maire S.J. Mot., *Kaminski II*, ECF No. 42.) Plaintiffs submitted a joint brief in Opposition (Pls.' Opp'n, *Kaminski I*, ECF No. 102) and Defendants Mastronardy and Pedalino submitted a Reply (Mastronardy/Pedalino Reply, *Kaminski I*, ECF No. 103). The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, and other good cause shown, Defendants' Motions for Summary Judgment are GRANTED in both *Kaminski I* and *II*.

## I.   <u>Background</u>[5]

### A.    **Summary of Plaintiffs' Complaints in *Kaminski I and II***

The Court begins with an overview of the Plaintiffs' allegations. Unless otherwise noted, the following narrative is drawn from the complaints in *Kaminski I* and *II*. These actions stem from the 2006 and 2011 promotional examinations administered by the Toms River Police Department

---

Stocco, Scott Moeller, Peter Sundack, Robert Rankin, Keith Diehl, Daniel Sysol, Eugene Bachonski, and Christopher McDowell. Plaintiffs also name John Does 1-5.

[4] For ease of reference, all plaintiffs in *Kaminski I* and *II* will be collectively referred to as "Plaintiffs" and individually referred to by their last names. Likewise, all defendants in *Kaminski I* and *II* will be collectively referred to as "Defendants" and individually referred to by their last names preceded by the word "Defendant" (*e.g.*, Defendant Mastronardy).

[5] In accordance with Local Civil Rule 56.1, Statements of Undisputed Material Facts ("SUMF") accompanied  Defendants' motions for summary judgment. (Mastronardy and Pedalino ("MP") SUMF, *Kaminski I*, ECF No. 94-1; Gerding SUMF, *Kaminski I*, ECF No. 97-1; Maire SUMF, *Kaminski II*, ECF No. 42-3.) Plaintiffs submitted a joint response to Defendants' SUMF (Pls.' Resp., *Kaminski I*, ECF No. 102-1) and a Counter SUMF (Pls.' Counter, *Kaminski I*, ECF No. 102-2.) Defendants Mastronardy and Pedalino filed a Response to Plaintiffs' Counter SUMF. (MP Counter Resp., *Kaminski I*, ECF No. 103-1.) Toms River did not submit a SUMF, but included "Facts and Procedural Background" in their brief. Nevertheless, Toms River's Motion for Summary Judgment does not evade resolution. The aforementioned Statements of Undisputed Material Facts submitted by Plaintiffs and Defendants provide ample factual recitation from which the Court can resolve the instant motions.

("TRPD") to determine which police officers would be promoted to the ranks of sergeant and lieutenant. In both actions, Plaintiffs claim that their rights under the First and Fourteenth Amendments were violated based on alleged manipulation of the promotional exams by Toms River, superior officers—Defendants Gerding, Mastronardy, and Pedalino—and police offers who were promoted, or deemed eligible for promotion, as a result of these exams. Specifically, in *Kaminski I*, Defendants allegedly altered Plaintiffs' scores in order to promote officers of their preference. In *Kaminski II*, Plaintiffs' claims mainly focus on exam manipulation based on an unfair and arbitrary promotional examination process. In both actions, however, the underlying theme is that Defendants exercised favoritism when promoting officers and that this favoritism was implemented during the subjectively graded portion of the exams, known as the "evaluation." Namely, Defendants gave higher evaluation scores to the officers that they preferred and lower scores to those that they did not, such as Plaintiffs. As a result, Plaintiffs received "unfairly low" grades on the evaluation, rendering them ineligible for promotions.

Based on the foregoing conduct, *Kaminski I* was filed in 2010 after the administration of the 2006 Sergeant's and Lieutenant's Exams, and *Kaminski II* was filed in 2011 during the 2011 Sergeant's Exam. In their lawsuits, Plaintiffs seek, among other things, demotion of the officers who became eligible for promotion as a result of the "tainted" exams, or, in the alternative, promotion of Plaintiffs. A more detailed recitation of the facts underlying these causes of action follows.

### B.  Kaminski I - 2006 Sergeant's and Lieutenant's Examinations[6]

At all times relevant to this litigation, Plaintiffs were and continue to serve as Toms River police officers. Kaminski has been a police officer with the TRPD since December 28, 1988 and is a senior patrol officer who holds the rank of corporal. Russell has been an officer with the TRPD since

---

[6] As an affirmative defense, Defendants assert that Plaintiffs' claims in *Kaminski I* are barred by the statute of limitations. Because the Court grants Defendants' Motions for Summary Judgment on this ground, *see* Part III *infra*, the Court only recites the facts material to that finding.

September 6, 1994 and President of the Policemen's Benevolent Association ("PBA") Local 137 since June 2001. (Pls.' Counter SUMF ¶ 2.) Palino has been a police officer with the TRPD since October 1, 1990 and has been Vice President of the PBA since June 2003. (Pls.' Counter SUMF ¶ 2.) Ross has been a police officer with the TRPD since October 1, 1990 and was promoted to the rank of Sergeant on August 10, 2004. Kaminski, Russell, and Palino took the Sergeant's Exam administered in 2006 and Ross took the Lieutenant's Exam administered in 2006. Likewise, at all times relevant to this litigation, Defendant Mastronardy was and continues to serve as the Chief of Police of the TRPD, Defendant Pedalino, now retired, was the Deputy Chief of the TRPD, and Defendant Gerding, now retired, was a lieutenant at the TRPD. (MP SUMF, ¶ 3; Gerding SUMF, ¶ 3; Pls.' Resp. B, ¶ 3; Pls.' Resp. D, ¶ 3.)

Toms River is not a "civil service" municipality, and thus the promotional examinations are considered a "Chief's Test." (Pls.' Counter SUMF ¶ 10.) The TRPD "Rules and Regulations/ Policies and Procedures" ("TRPD Promotion Policy") provides that "[p]romotion of any police officer of the [TRPD] to a superior position shall be made from the membership of the [TRPD] after a promotional procedure as determined by Mayor and Council." (Pls.' Ex. 156.) Approximately every three years, there is a new Sergeant's and Lieutenant's promotional examination. (Pls.' Counter SUMF ¶ 15.) In 2006, Toms River, through its police department, administered promotional examinations to its police officers to determine which officers would be promoted to the rank of Sergeant or Lieutenant. (MP SUMF, ¶ 4; Pls.' Resp. D, ¶ 4.) The examinations were approved by the Toms River Township Council, and Toms River entered into a contract with the International Association of Chiefs of Police ("IACP") to administer the examinations. (MP SUMF, ¶ 4; Pls.' Resp. D, ¶ 4.) The IACP form of the examination is not used by other jurisdictions in New Jersey. (Pls.' Counter SUMF ¶ 18.)

### 1.    Sergeant's and Lieutenant's Exams

The Sergeant's Exam, which was announced on July 26, 2006, consisted of four (4) sections. (MP SUMF, ¶ 5; Pls.' Resp. D, ¶ 5.) The first section was a written section, comprised of one hundred multiple-choice questions written and objectively graded by IACP. (MP SUMF, ¶ 6; Pls.' Resp. D, ¶ 6.) This section was worth 35% of the candidate's total examination score. (MP SUMF, ¶ 6; Pls.' Resp. D, ¶ 6.) Longevity, also known as seniority, counted for the second section of the examination, and was worth 10% of the candidate's total examination score. (MP SUMF, ¶ 7 & n.2; Pls.' Resp. D, ¶ 7.) For every month of service, 0.0555 points were added to the candidate's score, for a maximum number of 10 points. (MP SUMF, ¶ 7 & n.2; Pls.' Resp. D, ¶ 7.) Half of these points were added to the multiple-choice section, and the remaining half were added to the final score. (MP SUMF, ¶ 7 & n.2; Pls.' Resp. D, ¶ 7.) A candidate could achieve the maximum points for seniority after 15 years of service with the department. (MP SUMF, ¶ 7 & n.2; Pls.' Resp. D, ¶ 7.)

On December 3, 2006, fifty Toms River police offers took the multiple-choice section of the Sergeant's Exam.[7] (MP SUMF, ¶ 8; Pls.' Resp. D, ¶ 8.) Only those candidates whose multiple-choice scores, including points for longevity, were in the top half (or the top 25 candidates) were permitted to take the remaining portions of the Sergeant's Exam. (MP SUMF, ¶ 8; Pls.' Resp. D, ¶ 8.) All other examinees that did not score in the top half were eliminated from taking the remaining two sections. (MP SUMF, ¶ 8; Pls.' Resp. D, ¶ 8.) Kaminski, Russell, and Palino were among the examinees who scored in the top half on the multiple-choice section. (MP SUMF, ¶¶ 14, 17, 20; Pls.' Resp. D, ¶¶ 14, 17, 20.)

For those candidates whose multiple-choice scores fell in the top half, the third section of the Sergeant's Exam, an "in-basket" written examination, was administered on December 6, 2006. (MP SUMF, ¶ 46; Pls.' Resp. D, ¶ 46.) The third section comprised of situational questions to which each

---

[7] One police officer was permitted to take the examination at a later date because he was serving in Iraq on the date the examination was administered.

candidate gave a written response. (MP SUMF, ¶ 9; Pls.' Resp. D, ¶ 9.) This section was worth 35% of the candidate's total examination score. (MP SUMF, ¶ 9; Pls.' Resp. D, ¶ 9.)

Thereafter, from December 11-18, 2006, the fourth and final section, entitled the "Staff Assessment of Promotional Potential" and commonly known as the "evaluation" section, was conducted. (MP SUMF, ¶ 46; Pls.' Resp. D, ¶ 46.) This section consisted of an evaluation of the candidate's records by three members of the TRPD. (MP SUMF, ¶ 11; Pls.' Resp. D, ¶ 11.) The three-member panel consisted of two permanent evaluators and a third evaluator, chosen by the candidate, who was or had been the candidate's supervisor in the prior three years. (MP SUMF, ¶ 12; Pls.' Resp. D, ¶ 12.) This section was worth 20% of the candidate's total examination score and was scored by those three members of the TRPD—not by the IACP. (MP SUMF, ¶¶ 11, 13; Pls.' Resp. D, ¶¶ 11, 13.) The three evaluators graded each candidate in forty-four categories in the areas of professionalism, job knowledge, interpersonal relationships, work management, safety, and communication. (MP SUMF, ¶ 42; Pls.' Resp. D, ¶ 42.) The evaluation form instructs the three evaluators to grade each candidate on a scale from one to seven—one being "unacceptable" and seven being "outstanding"—in each category. (Ryan Cert., Exs. B, C, D.) For this section, only one evaluator darkened the circles on each candidate's score sheet with the corresponding grades given in each category. (MP SUMF, ¶ 43; Pls.' Resp. D, ¶ 43.) The candidates were not present during this portion of the examination. (MP SUMF, ¶ 11; Pls.' Resp. D, ¶ 11.)

For their evaluations, Kaminski, Russell, and Palino all had the same three-member panel. Their panel consisted of permanent evaluators, Defendant Gerding and Lieutenant Michael Little, and they each chose Sergeant George Wetzel as their third evaluator. (MP SUMF, ¶¶ 12, 14, 17, 46; Pls.' Resp. D, ¶¶ 12, 14, 17, 46.) Defendant Gerding was the evaluator who darkened the circles and completed the score sheets for each candidate. (MP SUMF, ¶ 43; Pls.' Resp. D, ¶ 43.) Prior to the exams, the evaluators received approximately 20-30 minutes of training. (Pls.' Counter SUMF ¶ 50.)

The Lieutenant's Exam, which was also announced on July 26, 2006, was conducted in a similar manner as the Sergeant's Exam. (MP SUMF, ¶ 24; Pls.' Resp. D, ¶ 24.) The Lieutenant's Exam consisted of five sections: (1) a multiple-choice section worth 23.33%; (2) an oral presentation worth 23.33%; (3) an in-basket portion worth 23.33%; (4) an evaluation worth 20%; and (5) seniority worth 10%. (MP SUMF, ¶ 25; Pls.' Resp. D, ¶ 25.)  Like the Sergeant's Exam, the first section of the exam was a written section, comprised of one hundred multiple-choice questions written and objectively graded by the IACP. (MP SUMF, ¶ 25; Pls.' Resp. D, ¶ 25; Am. Compl., ¶¶ 85-86.) Unlike the Sergeant's Exam, however, all candidates who took the multiple-choice section were permitted to take the remaining sections of the exam regardless of their multiple-choice score. (MP SUMF, ¶ 26; Pls.' Resp. D, ¶ 26.) The next section, the oral presentation, included a presentation regarding a budgetary issue. (MP SUMF, ¶ 26; Pls.' Resp. D, ¶ 26.) And, similar to the Sergeant's Exam, each candidate was evaluated by a panel of three members of the TRPD. (MP SUMF, ¶ 26; Pls.' Resp. D, ¶ 26.) Defendant Mastronardy wrote a portion of the questions for the Lieutenant's Exam. (MP SUMF, ¶ 55; Pls.' Resp. D, ¶ 55.)

On December 3, 2006, Ross took the multiple-choice section of the examination. (MP SUMF, ¶ 23; Pls.' Resp. D, ¶ 23.) Then, Captain Steven Henry, Captain Louis Kohler, and Defendant Gerding evaluated him. (MP SUMF, ¶ 26; Pls.' Resp. D, ¶ 26.)

Immediately after the first section of each exam was administered, all promotional candidates had an opportunity to review the multiple-choice section for two hours to determine if he contested any of the questions. "Any test questions that [were] contested [required] a written appeal [to the IACP] to merit consideration." (Ryan Cert., Ex. E.) There was no appeal process for the other aspects of the exam. (MP SUMF, ¶ 196; Pls.' Resp. D, ¶ 196.) At the time the exam was administered, the officers who took the exams, including Plaintiffs, did not have any reason to know or believe that the exam was administered in a way that was inappropriate. (Pls.' Ex. 1, ¶ 18; Ex. 2, ¶ 15.)

On March 1, 2007, Defendant Mastronardy distributed a memorandum to all personnel regarding the "Promulgation of Promotional List" based on the results of the Sergeant's and Lieutenant's Exams. (MP SUMF, ¶ 48; Pls.' Resp. D, ¶ 48.) The list named the top ten candidates, in ranking order, for Sergeant and the top five candidates, in ranking order, for Lieutenant. The memorandum did not provide the final test scores of the candidates—only rank—and advised that a "complete list [was] available in the Office of the Chief of Police." The promotional list took effect on February 15, 2007 and expired on February 14, 2010. Plaintiffs' names were not listed in this memorandum and they were not promoted. (Ryan Cert., Ex. G.) The examination scores were never published. (Pls.' Ex. 1, ¶ 18; Ex. 2, ¶ 17; Ex. 3, ¶ 18; Ex. 5, ¶ 13.)

Out of the twenty-six people who passed the multiple-choice section of the Sergeant's Exam, seven were promoted. (Pls.' Counter SUMF ¶ 32.) Out of the fifty-one police officers who took the Sergeant's Exam, Kaminski ranked 14th, Russell ranked 16th, and Palino ranked 22nd. (MP SUMF, ¶¶ 15, 18; Pls.' Resp. D, ¶ 26.) Ross ranked last out of nine applicants for the Lieutenant's Exam. (Pls.' Counter SUMF ¶ 99.)

## 2.     Investigation into Sergeant's and Lieutenant's Exam Results

After the Promulgation of Promotion List was released on March 1, 2007, Kaminski went to see an attorney because he was dissatisfied with his examination ranking. (Pls.' Counter SUMF ¶ 105.) The attorney told Kaminski that he did not have enough facts to sustain a cause of action. (*Id.*) On October 5, 2009, Kaminski sent correspondence to the Administrator of Toms River, summarizing the investigation of his exam scores. The correspondence stated, in pertinent part:

> The finalized scores and placement came back from the testing agency, which was the [IACP], on January 3, 2007. Each candidate received a breakdown of their own scores including their evaluation score, my evaluation score was a 15.260. On January 9, 2007, I asked Lt. Gerding about my evaluation score of 15.260 and he had an extremely puzzled look on his face – as if he knew that score was not correct. When I told him I had a partial list of candidates who scored better than me on their evaluations, he pulled out a piece of paper from his notebook to check if my list was correct – to which he said it was . . . . On January 14, I spoke with Sgt. Wetzel, who stated that I scored better than another candidate that he also evaluated.

Later, I found out that the other candidate's score was a 16.818. It was at this point that I started to think that someone had possibly altered the evaluation sheets (which could have easily been done – given the lack of checks and balances). On January 23, 2007, I met with [Defendant Pedalino], for almost 2 hours, who showed me that I only received two-7's on my evaluation. Immediately after I spoke with Deputy Chief Pedalino, I spoke with Sgt. Wetzel again, who advised me that my score didn't sound right and that my evaluators gave me at least a dozen to fifteen – 7's on my evaluation. On January 31, 2007, I again talked to Lt. Gerding and he told me that I received at least five – 7's, but dismissed the possibility of the evaluation scores being forged, after I alleged that I thought that is what happened.

On June 9, 2008, I saw Toms River Police Chief Michael Mastronardy . . . and he advised me that a "little birdie" told him that I had problems with the promotional exam. The Chief also stated that if he had not witnessed first-hand the problems with the 2006 police entrance exam and the June 2008 captains promotions, he would not believe my allegations of forgery on the 2006 promotional exams. In mid-August 2008, Chief Mastronardy saw me in headquarters and told me that the town was going to hire an investigator to look into the problems with the entrance exam and promotional exams. On April 5, 2009, I spoke with Chief Mastronardy again, and he told me that Mayor Kelaher did <u>not</u> want to hire an investigator, because it was not a problem that was on the "front burner". . . . On April 7, 2009, upon Chief Mastronardy's orders, I met with him and Toms River Police Internal Affairs Lt. Bruce Burgess, in the Chief's office for almost 1 1/2 hours, and discussed the problems I had with the 2006 promotional exams . . . [including] my complaint of criminal allegations and corruption . . . as it related to scores being forged on the exams described above.

(Ryan Cert., Ex. K.)[8]

In his April 2009 conversation with Defendant Mastronardy, Kaminski said that he had seen "some lawyers" regarding the 2006 Sergeant's Exam, but he did not have $70,000 to bring a lawsuit. (Ryan Cert., Ex. J, at 000128.) In April 2009, Kaminski had conversations with Ross and Russell regarding his conversations with Defendant Mastronardy and Lieutenant Burgess. Kaminski told them that the 2006 evaluations may have been manipulated.

On July 13, 2009, Kaminski submitted an Open Public Records Act ("OPRA") request to Toms River and received a response on September 8, 2009. (MP SUMF, ¶ 94; Pls.' Resp. D, ¶ 94.)

---

[8] The next day, the Business Administrator for Toms River, Paul Shives, acknowledged receipt of Kaminski's correspondence and suggested that Kaminski's attorney contact Toms River's Labor Counsel. (Ryan Cert., Ex. L.)

His response included the exam scores of all applicants who took the 2006 Sergeant's and Lieutenant's Exams.[9] Kaminski discussed the results of his OPRA response with Ross.

In October 2009, Kaminski met with Assistant Township Administrator Daniel Mahoney. At that meeting Plaintiff Kaminski raised the issue of criminal conduct in connection with the 2006 Sergeant's Exam. As a result, Mr. Mahoney contacted the Ocean County Prosecutor's Office. A detective was assigned to the matter and tried contacting Kaminski several times, but Kaminski never agreed to speak with her. (MP SUMF, ¶ 88-90; Pls.' Resp. D, ¶ 88-90.)

In April 2010, Kaminski met with his current attorney and, as a result of the 2006 Sergeant's and Lieutenant's Exams, Plaintiffs filed a Complaint in this Court on June 24, 2010.[10] On April 22, 2011, Plaintiffs filed an Amended Complaint featuring seven counts. Counts I-III and V allege violations of § 1983 and the First and Fourteenth Amendments based on due process and equal protection violations, and retaliation. Count IV alleges "official misconduct" by Defendant Mastronardy. Count VI alleges common law fraud and Count VII alleges breach of contract against Toms River. After Defendants filed motions for summary judgment, Plaintiffs abandoned their claims in Counts II (Equal Protection), IV (Official Misconduct), VI (Common Law Fraud), and VII (Breach of Contract). (Pls.' Counter SUMF ¶ 8.) The remaining claims are pursuant to § 1983 based on retaliation and substantive and procedural due process violations.

C.      Kaminski II – 2011 Sergeant's Exam

The next Sergeant's Exam was scheduled for April 28, 2010, however, it was postponed and rescheduled for June 11, 2011. (Pls.' Ex. 1, ¶ 23; Ex. 2, ¶ 20-21; Ex. 3, ¶ 22-23.) The administration

---

[9] Two years before Kaminski made his OPRA request, Russell made an OPRA request to Toms River for contracts, agreements, and ordinances regarding promotional testing for sergeants and lieutenants and received a response. (MP SUMF, ¶ 131; Pls.' Resp. D, ¶ 131.)

[10] Palino admitted that he had no suspicions about the problems with the testing process and that he is relied solely upon information he obtained from Kaminski and other Plaintiffs shortly before filing the lawsuit in 2010. (MP SUMF, ¶ 148; Pls.' Resp. D, ¶ 148.)

of the 2011 exam was similar to the 2006 exam, with one exception: the evaluation portion of the exam occurred prior to the multiple-choice section. As with the 2006 exam, Toms River entered into an agreement with the IACP to administer the Sergeant's Exam in 2011. (MP SUMF, ¶ 106; Pls.' Resp. D, ¶ 106.)

On March 23, 2010, PBA Local 137 and Toms River entered into a Contract Modification and Extension Agreement, which deferred certain raises for the members of the PBA. (MP SUMF, ¶ 108; Pls.' Resp. D, ¶ 108.) As a condition of the deferral, the PBA requested and Toms River agreed to an amendment to the timing of the promotional process. (MP SUMF, ¶ 108; Pls.' Resp. D, ¶ 108.) The amendment provided:

> The promotional process *for Sergeant* shall include the following terms and conditions: effective immediately upon execution of the Agreement, no promotions for Sergeant shall occur unless not less than 120 days prior to the written examination, [Toms River] shall announce the criteria for promotions ([i.e.,] evaluations, examinations, seniority and the like) together with the weight to be assigned to each criterion. *If the promotional evaluations are one of the criteria for promoting to the rank of Sergeant*, [Toms River] shall publish the results of the promotional examinations not less than 90 days prior to the date on which the written examination is conducted.

(MP SUMF, ¶ 108; Pls.' Resp. D, ¶ 108) (emphasis in original.) (Ryan Cert., Ex. S.) (the "Modification Agreement").

On September 28, 2010, Ordinance 4294-10 (the "Ordinance"), which dealt with the promotional procedure for the rank of Sergeant, was adopted. (MP SUMF, ¶ 109; Pls.' Resp. D, ¶ 109.) Consistent with the Modification Agreement, the Ordinance provides, among other things, that Toms River shall make the results of the promotional evaluations "known to all applicants at least 90 days in advance of the scheduling of any written test." (MP SUMF, ¶ 109; Pls.' Resp. D, ¶ 109.) The Ordinance also set forth the sections of the exam constituting Phase I and Phase II. Phase I of the exam included the multiple-choice section and points for longevity. Those applicants who

scored in the top half of the Phase I portion of the exam were eligible to take Phase II, which consisted of the in-basket portion, the evaluation, and points for longevity. (Ryan Cert., Ex. T.)[11]

Despite the terms of the Ordinance, however, the evaluation portion was conducted first and all officers who applied for the examination were subject to the evaluation process, as opposed to only those who passed the multiple-choice section. (MP SUMF, ¶ 107; Pls.' Resp. D, ¶ 107.) For this evaluation, Lieutenants Brosnan and Dunton were the two permanent evaluators for Kaminski, Palino, and Russell. (Pls.' Ex. 1, ¶ 25.) Lieutenant Brosnan was named as a defendant in *Kaminski I* after being promoted as a result of the 2006 exams. The evaluation portion of the Sergeant's Exam occurred in January 2011, but the evaluation scores were not published 90 days in advance of the upcoming multiple-choice section of the exam. (MP SUMF, ¶ 200; Pls.' Resp. D, ¶ 200.)

Due to the lack of publication, on March 24, 2011, Plaintiff Russell, on behalf of the PBA, filed a grievance with Toms River. He claimed that under the terms of the Modification Agreement, Toms River "must publish the results of the promotional evaluations not less than 90 days prior to the date on which the written examination is conducted." (MP SUMF, ¶ 110; Pls.' Resp. D, ¶ 110.) Specifically, Plaintiff Russell claimed that "[j]ust informing each candidate of his/her own scores is not the same as publishing the information so that all candidates can determine whether they would like to study for the promotional process and pay for the costs of joining a study group." (MP SUMF, ¶ 111; Pls.' Resp. D, ¶ 111.) The grievance also stated that the Ordinance "is inconsistent in some respects with Section 4 of the [Modification] Agreement." (Ryan Cert., Ex. U.)

As a result of the grievance, Toms River agreed with the PBA's position and the dates for the written examination were delayed, so that the evaluation scores of the applicants could be published

---

[11] In addition, citing N.J. Stat. Ann. § 40A:14-129, the Ordinance states that "due consideration shall be given to the length and merit of service and to seniority in service to any candidate for promotion to sergeant." Likewise, as amended by the Ordinance, Toms River Code § 50-11(G) provides the same information as the Ordinance regarding the promotional process for sergeants.

in compliance with the Modification Agreement. The exam dates for the written and in-basket exams were moved to August 13 and 25, 2011. (MP SUMF, ¶ 136; Pls.' Resp. D, ¶ 136.)

Toms River and Russell, on behalf of the PBA, entered into a settlement agreement effective May 3, 2011 (the "Settlement Agreement"). (MP SUMF, ¶ 113; Pls.' Resp. D, ¶ 113.) The Settlement Agreement provided that publication shall mean "providing electronic notification to each officer below the rank of sergeant on the DMS system currently used by the [TRPD]. Additionally, notice shall be placed in the squad room line-up book." (Ryan Cert., Ex. X.) The Settlement Agreement also provided that "Phase [I] testing will be administered on August 13, 2011 [and] Phase [II] testing shall be administered on August 25, 2011." (Ryan Cert., Ex. X.)

Initially fifty officers submitted requests to take the promotional exam. (MP SUMF, ¶ 100; Pls.' Resp. D, ¶ 100.) Out of those officers, only forty-two officers took the written examination. (MP SUMF, ¶ 100; Pls.' Resp. D, ¶ 100.) Five officers withdrew after the evaluation process and three more were "no shows" for the written examination. (MP SUMF, ¶ 100; Pls.' Resp. D, ¶ 100.)

The final results of the 2011 Sergeant's Exam were released on September 15, 2011. Overall, Kaminski ranked 19th, Russell ranked 13th, and Palino ranked 14th. (MP SUMF, ¶ 99; Pls.' Resp. D, ¶ 99.) Their evaluation scores were lower than those they had received on the 2006 Sergeant's Exam. (Pls.' Count SUMF, ¶ 156.)

Plaintiffs Kaminski, Palino, and Russell filed *Kaminski II* on August 9, 2011.[12] Plaintiffs amended their complaint twice, so that the SAC features three counts against Defendant Mastronardy, Toms River, and the police officers promoted or eligible for promotion based on the 2011 Sergeant's Exam. Specifically, Counts I and II allege Fourteenth Amendment due process

---

[12] On that same day, Plaintiffs filed a motion for a temporary restraining order to enjoin the remaining sections of the 2011 Sergeant's Exam from taking place due to alleged manipulation of the January 2011 evaluations. (*Kaminski II*, ECF No. 3.) After a hearing, the Honorable Freda L. Wolfson, U.S.D.J., denied Plaintiffs motion holding, among other things, that Plaintiffs were not in danger of irreparable harm because consideration for promotion was ongoing. (Order, *Kaminski II*, ECF No. 13.)

violations pursuant to § 1983 against all Defendants based on the purported right to a "fair and transparent process of promotions" and deprivation of promotions, and Count II alleges a First Amendment retaliation claim pursuant to § 1983 against Toms River and Defendant Mastronardy for allegedly retaliating against Plaintiffs for "speaking out" about the 2006 Sergeant's Exam and for filing *Kaminski I*. (SAC, *Kaminski II*, ¶¶ 125-27, 130, 139-46.) Before filing this lawsuit, Kaminski never explored whether or not there was a State law process for him to challenge the promotional process as arbitrary and capricious. (MP SUMF, ¶ 105; Pls.' Resp. D,     ¶ 105.)

## II.   <u>Legal Standard</u>

Summary judgment is appropriate if the record shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should only be granted if the evidence available would not support a jury verdict in favor of the nonmoving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

III.     **Kaminski I**

In *Kaminski I*, Defendants contend, among other things, that Plaintiffs' claims are barred by the statute of limitations.[13] In response, Plaintiffs urge the Court to apply the so-called "discovery rule" or, in the alternative, the doctrine of equitable tolling to save their claims. For the following reasons, the Court finds that Plaintiffs' claims in *Kaminski I* are barred by the statute of limitations.

Section 1983 actions in New Jersey must be brought "within two years of the accrual of the cause of action." *O'Connor v. City of Newark*, 440 F.3d 125, 125-27 (3d Cir. 2006) (quoting *Brown v. Foley*, 810 F.2d 55, 56 (3d Cir. 1987)); *see also Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 24 (3d Cir. 1989). Because the parties do not dispute that the statute of limitations for Plaintiffs' claims is two years, the issues presented before the Court are fairly narrow. As an initial matter, the Court must determine when Plaintiffs' § 1983 claims accrued. Then, the Court must determine whether the accrual date was delayed by the discovery rule or, alternatively, whether the limitations period was equitably tolled. The Court will address each question, in turn.

A.     **The "Discovery Rule"**

Unlike the selection of the limitations period, which is determined by reference to state law, the accrual of a § 1983 claim is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). As a general rule, the limitations period starts running at "the time when the plaintiff kn[e]w or ha[d] reason to know of the injury which is the basis of the § 1983 action." *Genty v. RTC*, 937 F.2d 899, 919 (3d Cir. 1991) (citing *Deary v. Three-Unnamed Police Officers*, 746 F.2d 185, 197 n.16 (3d Cir. 1984)). Specifically, a claim concerning a "discrete" adverse act, such as a termination, failure to promote, denial of transfer or refusal to hire, is independently actionable as an unlawful employment practice and is generally found to have accrued on the day that it occurred. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002); *Rush v. Scott Spec. Gases, Inc.*, 113 F.3d 476, 483-84

---

[13] Because the Court grants Defendants' motion on this ground, it does not reach Defendants' Torts Claims Act defense.

(3d Cir. 1997) (failure to promote is a discrete act for purposes of the statute of limitations). The "discrete act" rule applies to claims pursuant to § 1983. *O'Connor*, 440 F.3d at 128.

The so-called "discovery rule" is an equitable doctrine which tolls the applicable statute of limitations until plaintiff knew or had reason to know of the existence of the wrong suffered. *Bryson v. Diocese of Camden, N.J.*, 909 F. Supp. 2d 364, 371-72 (D.N.J. 2012). "[T]he discovery rule delays the initial running of the statute of limitations . . . until the plaintiff has discovered: (1) that he or she has been injured; and (2) that this injury has been caused by another party's conduct." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 590 (3d Cir. 2005) (citing *New Castle Cnty. v. Halliburton NUS Corp.*, 111 F.3d 1116, 1124 (3d Cir. 1997)). Under the discovery rule, "the claim accrues as soon as a potential plaintiff either is aware, or should be aware after a sufficient degree of diligence, of the existence and source of an actual injury." *Podobnik*, 409 F.3d at 590 (citations omitted). Discovery does not require knowledge of a legal injury or awareness of all the evidence that will ultimately be relied upon. *See Freeman v. State*, 347 N.J. Super. 11, 22 (App. Div. 2002) (citing *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993)). The crux of Plaintiffs' claims is that they were denied promotions based on the alleged manipulation of exam scores and the promotions process by Defendants. As part of their prayer for relief, Plaintiffs not only ask for the 2006 Sergeant's and Lieutenant's Exams to be declared null and void, but ask to be promoted.

The exam results were distributed on January 3, 2007, however, the Promulgation of Promotion List was not issued until March 1, 2007. Following the Supreme Court precedent in *Morgan* and the Third Circuit in *Oshiver v. Levin, Fishbein, Sedran, & Berman*, 38 F.3d 1380 (3d Cir. 1994), an adverse employment practice, such as failure to promote, constitutes a discrete act for statute of limitation purposes. As such, Plaintiffs' claims accrued on March 1, 2007 when the Promulgation of Promotion List was issued to all personnel, including Plaintiffs. On that day, Plaintiffs became aware (1) that they had been injured, *i.e.*, not promoted, and (2) that this injury had been caused by another party's conduct. *Oshiver*, 38 F.3d at 1391; *see also Morgan*, 536 U.S. at 117.

"That [Kaminski] may have been deceived regarding the underlying motive behind [his lack of promotion] is irrelevant for the purposes of the discovery rule." *Oshiver*, 38 F.3d at 1391. The issuance of the Promulgation of Promotion List put Plaintiffs on inquiry notice to investigate the facts underlying their injury and decide whether to bring a cause of action in court. Because the list was issued on March 1, 2007, Plaintiffs had until March 1, 2009 to file their cause of action; they did not do so until June 4, 2010—more than three years after their claims had accrued. Therefore, Plaintiffs' claims are untimely and barred by the statute of limitations.

Because the Court concludes that Plaintiffs' claims accrued on March 1, 2007, it will now discuss whether the running of that statute of limitations was tolled based on the principles of equitable tolling.

### B. Equitable Tolling

Equitable tolling applies when a claim has accrued, but a plaintiff is ignorant of the cause of action so tolling is deemed appropriate as a matter of fairness. The Third Circuit recognizes three principal situations in which federal equitable tolling is appropriate, including "where the defendant has actively misled the plaintiff respecting [his] cause of action, and that deception causes non-compliance with an applicable limitations provision." *Podobnik*, 409 F.3d at 591 (citations omitted). "The doctrine of equitable tolling stops a statute of limitations period from running after a claim has accrued . . . but should be applied 'sparingly.'" *Id.* (citing *Morgan*, 536 U.S. at 113); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). Plaintiffs claim that equitable tolling applies because Kaminski was "actively misled" by Defendants Mastronardy and Pedalino in his January 2007, June 2008, and August 2008 conversations with them. (Pls.' Opp'n 2-3, 5-6, 14-15.) Under these circumstances, the Court finds that the doctrine of equitable tolling does not apply because Kaminski was not "actively mislead" by Defendants Pedalino and Mastronardy to warrant tolling of the statute of limitations.

17

Plaintiffs first point to Kaminski's January 23, 2007 meeting with Defendant Pedalino to justify equitable tolling. At that meeting, Deputy Chief Pedalino told Kaminski that, even if Kaminski had scored higher on the evaluation portion of the exam, he would not have been promoted. Plaintiffs argue that this statement caused Kaminski's non-compliance with the statute of limitations. (Pls.' Opp'n 5-6.) Specifically, Plaintiffs argue that, because Kaminski relied on Deputy Chief Pedalino's comments at the January 23 meeting, he did not continue his investigation until he met with Defendant Mastronardy over one year later, in June 2008. (*Id.*)

This argument is unconvincing. Putting aside that the statute of limitations did not accrue until March 1, 2007, this meeting did not equitably toll the limitations period. Construing this conversation in favor of Plaintiffs, Defendant Pedalino's comments were misleading; however, Kaminski—"a person with a reasonably prudent regard for [his] rights"—was not misled by Defendant Pedalino's communication. *See Oshiver*, 38 F.3d at 1392. Indeed, despite Defendant Pedalino's comment, he continued to investigate his scores by meeting with Sergeant Wetzel on that same day. Moreover, he went to an attorney shortly after the promotion list was issued seeking legal advice about his ranking. *See Weger v. Shell Oil Co.*, 966 F.2d 216, 219 (7th Cir. 1992) ("Professional advice by an attorney, even incompetent advice, does not toll the statute of limitations").

Plaintiffs also point to Kaminski's June 2008 and August 2008 conversations with Defendant Mastronardy. Plaintiffs argue that Kaminski delayed his investigation after Defendant Mastronardy told him that an investigator from Rutgers would be hired to look into the problems regarding the 2006 promotional exams. (Pls.' Opp'n 6-7.) As a result, Kaminski was unable to possess sufficient knowledge to file *Kaminski I*. (*Id.*)

Plaintiffs' arguments, here, suffer from the same flaw as the January 2007 conversation. First, the June 2008 conversation does not warrant equitable tolling because the record does not show that Defendant Mastronardy made any comments about an investigation upon which Kaminski could

18

have relied. Second, assuming the August 2008 comment regarding the Rutgers investigator was misleading, Kaminski did not rely on this communication in making the decision not to pursue his claims sooner. In his April 2009 conversation with Defendant Mastronardy, Kaminski said that he has seen "some lawyers" but decided not to bring a cause of action before April 2009 because it was "not worth it" to spend $70,000 on litigation and, in any event, he did not have the means to do so. (Ryan Cert., Ex. J, at 000128.)

Based on Kaminski's own actions, the Court concludes that the doctrine of equitable tolling does not apply here. The law required Plaintiffs to file their claims within two years from the date of their injury, but they failed to do so. For the reasons set forth above, Defendants' Motions for Summary Judgment in *Kaminski I* are GRANTED.[14]

## IV.   **Kaminski II**

In *Kaminski II*, Plaintiffs allege that the manipulation of the exam process at the hands of Chief Mastronardy and Toms River violated their rights under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983. To sustain Plaintiffs' constitutional claims, it is first necessary to find a viable claim of deprivation of a constitutional right. Under § 1983, a person who, under color of state law, deprives another of any "rights, privileges, or immunities secured by the Constitution and laws" is liable to the party. Defendants contend that: (1) Plaintiffs did not avail themselves of the New Jersey state procedures that would have satisfied their Fourteenth Amendment due process claims; (2) there is no evidence to support Plaintiffs' § 1983 claims; (3) Defendants have qualified immunity; and (4) Plaintiffs have not identified a policy, practice, or custom that caused the alleged violation of their rights to warrant municipal liability.

---

[14] Plaintiffs' Opposition primarily focuses on the investigation undertaken by Kaminski, but Plaintiffs also claim that Palino's, Ross', and Russell's claims are timely as well. The record shows that Plaintiffs Ross, Russell, and Palino ultimately relied on Kaminski to bring this lawsuit. Both the discovery rule and the doctrine of equitable tolling require potential plaintiffs to exercise some degree of due diligence. *See Oshiver*, 38 F.3d at 1392. Because these Plaintiffs failed to exercise the requisite due diligence, their claims are barred as untimely.

A.       **Fourteenth Amendment Due Process Claims**

Plaintiffs allege that their rights to procedural and substantive due process were deprived on two separate grounds: (1) the deprivation of their promotions was arbitrary and capricious; and (2) they were deprived of the right to a fair and transparent promotional process.  For the following reasons, Plaintiffs' claims fail as a matter of law.

1.       **Legal Standard**

To state a claim for denial of procedural due process, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures afforded him did not constitute "due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir.2006) (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)); *accord Iles v. de Jongh*, 638 F.3d 169, 173 (3d Cir. 2011).

"In evaluating a procedural due process claim, we first determine whether the asserted individual interests are encompassed within the fourteenth amendment's protection of life, liberty, or property." *Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007) (internal quotation and citation omitted). Whether there is an interest to trigger the protection of the Fourteenth Amendment is an issue of law. *Clark v. Twp. of Falls*, 890 F.2d 611, 617 (3d Cir. 1989). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* Moreover, even where there is a recognized property interest, if it is *de minimis*, the protections of due process do not attach. *Goss v. Lopez*, 419 U.S. 565, 576 (1975); *Versarge v. Twp. of Clinton, N.J.*, 984 F.2d 1359, 1370 (3d Cir.1993). In short, to satisfy the first prong of a procedural due process property claim, Plaintiffs must have a legitimate, more than *de minimis*, property interest in a promotion or to a fair promotional process. *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

"[T]o prevail on a substantive due process claim, 'a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience.' " *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir. 2009) (quoting *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir.2008) (citation omitted)). In other words, "the substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that shocks the conscience." *Fagan v. City of Vineland*, 22 F.3d 1296, 1303 (3d Cir. 1994) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)). As a matter of law, "mere negligence is insufficient to trigger constitutional liability." *Fagan*, 22 F.3d at 1306 (citing *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986)). Similar to a claim for procedural due process, Plaintiffs must show that they have a fundamental interest—right to a promotion or fair and transparent promotional process—protected by the Constitution.

The Court's analysis regarding Plaintiffs' substantive and procedural due process claims is limited to the threshold issue of whether Plaintiffs have demonstrated a protected interest in a promotion or to a fair promotional process.  The Court finds that they did not.

### 2.      Parties' Positions and Analysis

Defendants argue that although there is a protected property interest in continued employment, there is no protected due process right to a promotion or a fair promotional process. (Mastronardy Mot. S.J. 4; Mastronardy Reply 3.) Plaintiffs appear to abandon the notion that they are entitled to a promotion and assert that they have a protected interest in "due consideration" for a promotion or a fair and transparent promotional method. (Pls.' Opp'n 16.) Plaintiffs argue that this interest was created pursuant to N.J. Stat. Ann. § 40A:14-129, the TRPD Promotional Policy, the Ordinance, and Toms River Code § 50-11(G). (*Id.* at 17-18.)

The Court finds that Plaintiffs have not shown that they have a protected procedural or substantive right to a fair and transparent promotional process or the right to a promotion (to the

extent that they are claiming one). First, it is well-settled that there is no property or liberty interest in a promotion protected by the Fourteenth Amendment unless it has been established by local or state law. *Martin v. City of E. Orange*, No. 06-4293, 2009 WL 324187, at *4 (D.N.J. Feb. 9, 2009); *Pollock v. City of Ocean City*, 968 F. Supp. 187, 191 (D.N.J. 1997). Plaintiffs have failed to point to any state or local law showing that Plaintiffs, in this case, have a legitimate claim of entitlement to a promotion. *Cf. United States v. City of Chicago*, 896 F.2d 1033, 1036 (7th Cir. 1989) (holding that, because of the discretion involved in making promotions from sergeant to lieutenant, an applicant does not have a legitimate claim of entitlement to a promotion).

Furthermore, even if Plaintiffs were eligible for promotion, they cannot presume that they would obtain a promotion. *See Grimes v. City of E. Orange*, 285 N.J. Super. 154, 164 (App. Div. 1995) ("One who successfully passes an examination and is placed on an eligible list does not thereby gain a vested right to appointment"). Plaintiffs have failed to put forth any evidence to show that they have a procedural or substantive due process right to a promotion or, even if they were eligible for a promotion, that they had a vested right to appointment.

Second, none of the state or local laws that Plaintiffs cite appear to create a right to a fair and transparent promotional process. Section 40A:14-129 provides, regarding promotions of officers in a non-civil service municipality, that "[d]ue consideration shall be given to the member or officer so proposed for the promotion, to the length and merit of his service and preference shall be given according to seniority in service." On its face, it only states that applicants shall be given "due consideration" for a promotion. Plaintiffs also point to the Ordinance, the Toms River Code, and the TRPD Promotional Policy, but these local laws and policy state the same "due consideration" language as the statute, only adding language about the format of the Sergeant's Exam. Plaintiffs have not cited, and the Court has not found, any Third Circuit precedent that has created Plaintiffs' purported interest based on that statute or the other local laws and policy, and the Court declines to create one. Instead, Plaintiffs have cited cases that stand for the general proposition that a public

employee has a property interest in his continued employment, not a right to a promotion or to a fair and transparent promotional examination process. (Pls.' Opp'n 16 n.3.) Plaintiffs have not been terminated or told that they cannot take the Sergeant's Exam when the opportunity arises again, so those cases do not apply.  Indeed, the Court has found cases declining to recognize an interest in the right to a fair and transparent promotional process under the Due Process Clause. *See, e.g., Zavatsky v. O'Brien*, 902 F. Supp. 2d 135 (D. Mass. 2012) (collecting cases and dismissing plaintiff's procedural and substantive due process claims for a "fair and merit-based promotional process"); *Cuozzo v. Cimino*, 2012 WL 3116814 (N.J. App. Div. Mar. 13, 2012) (holding that "government employees do not possess a federal or state right to a fair promotions process").[15]

Because Plaintiffs have not shown that they have a property or liberty interest in a promotion or a fair promotions process, they cannot claim deprivation under the Due Process Clause. Therefore, their procedural and substantive due process claims cannot withstand summary judgment.

### B.     First Amendment Retaliation Claim

Plaintiffs allege that they were denied promotions in retaliation for filing *Kaminski I*. A First Amendment retaliation claim has three essential elements: (1) plaintiff's speech was protected under the First Amendment; (2) defendant took an adverse or retaliatory action; and (3) causation, *i.e.,* that the protected speech was a substantial or motivating factor in the retaliatory action, shifting the

---

[15] Plaintiffs also aver that the contract between the IACP and Toms River created a "mutually explicit understanding that Plaintiffs would receive a fair and objective testing process." (Pls.' Opp'n 17.) Plaintiffs cite the Supreme Court's decision in *Perry v. Sindermann*, 408 U.S. 593 (1972) for this proposition. *Perry* stands for the proposition that a plaintiff must establish a property interest to enjoy the protections under the Due Process Clause, but that a property interest *may* be established based on the existence of rules and understandings, as opposed to a formal contract. The Court noted, however, that the respondent's claim to continued employment still depended on state law. The respondent showed that he relied on a tenure provision in a faculty guide, which stated, in pertinent part, "The Administration of the College wishes the faculty member to feel that he has permanent tenure[.]" In comparison, the 2010 IACP-Toms River contract merely states that IACP will administer the promotional exams. The local and state laws and TRPD policy merely establish that Plaintiffs had to be considered for a promotion and delineate the format of the exam. This is a far cry from the provision and practices established in *Perry*. As such, Plaintiffs have failed to establish a property interest in a fair and transparent promotional process to support their due process claims.

burden of proof to defendant to demonstrate that it would have taken the same action absent the protected speech. *See Miller v. Mitchell,* 598 F.3d 139, 147 (3d Cir. 2010); *Gorum v. Sessoms,* 561 F.3d 179, 184 (3d Cir. 2009). The first element is an issue of law; the second and third are questions of fact. *Baldassare v. New Jersey,* 250 F.3d 188, 195 (3d Cir. 2001); *Johnson v. Lincoln Univ.,* 776 F.2d 443, 454 (3d Cir. 1985). Because the Court finds that Plaintiffs' conduct was not protected, the analysis is limited to the first prong.

Plaintiffs assert that they have established their retaliation claim: (1) by filing *Kaminski I,* Plaintiffs have engaged in protected speech; (2) in retaliation, they were denied promotions; and (3) their lawsuit was a substantial or motivating factor in the decision to deny their promotions. (Pls.' Opp'n 51-53.)[16] As a threshold matter, the Court must determine whether Plaintiffs' lawsuit was protected conduct affording the protections of the Constitution. The Court concludes that it was not.

A person who goes into government service does not give up the First Amendment right to express oneself freely as a citizen. "When a public employee sues a government employer under the First Amendment's Speech Clause, the employee must show that he or she spoke as a citizen on a matter of public concern." *Borough of Duryea, Pa. v. Guarnieri*, 131 S. Ct. 2488, 2492 (2011) (citing *Connick v. Myers*, 461 U.S. 138, 147 (1983). If an employee does not speak as a citizen, or does not address a matter of public concern, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.*

In evaluating whether a matter is of public concern, courts consider whether the speech "is important to the process of self-governance that communications on this topic, in this form and in this context, take place." *Zelinski v. Penn. State Police*, 108 F. App'x 700, 707 (3d Cir. 2004). A public employee's speech is not protected, however, even if it touches on a matter of public concern,

---

[16] In their brief, Plaintiffs appear to limit the basis for their claim to the lawsuit in *Kaminski I.* (*See* Pls.' Opp'n 51-55.)

if it was made pursuant to the employee's official duties. *Gorum v. Sessoms*, 561 F.3d 179, 185 (3d Cir. 2009). "Factors considered [in this analysis] include whether the speech fell within the individual's job duties, whether it related to special knowledge or experience acquired on the job, whether it was made inside or outside the work place, and whether it concerned the job's subject matter." *Houston v. Twp. of Randolph*, No. 11-4810, 2013 WL 1192579, at *11 (D.N.J. Mar. 21, 2013).

As an initial matter, Plaintiffs do not argue that their lawsuit is a matter of public concern. Instead, relying on Third Circuit precedent in *San Filippo v. Bongiovanni*, 30 F.3d 424 (3d Cir. 1994), they completely ignore this requirement, contending that, to make out a prima facie retaliation claim, they only need to show that the lawsuit was not frivolous. (Pls.' Opp'n 52.) Plaintiffs' reliance on *San Filippo* is misplaced, as it was abrogated in 2011 by the Supreme Court, in *Borough of Duryea*. In that case, the Court held that a plaintiff must show his lawsuit addresses a matter of public concern to support a First Amendment retaliation claim. 131 S.Ct. at 2492. The Court finds that Plaintiffs have not demonstrated that the lawsuit in *Kaminski I* addressed a matter of public concern and, therefore, Plaintiffs' First Amendment claim fails as a matter of law.

On June 24, 2010, Plaintiffs filed claims for failure to promote caused by alleged manipulation of exam scores and the promotional exam process. Plaintiffs have not shown that the *Kaminski I* lawsuit touches on " 'broad social or policy issues' or implicate[ ] the discharge of public responsibilities by an important government office, agency, or institution.' " *Gorum*, 561 F.3d 179 (citations omitted). Plaintiffs' claims appear to be extensions of their grievances regarding the promotional examination process and their low evaluation scores, not matters of public concern. *See Connick v. Myers*, 461 U.S. 138, 147-48 (1983) (holding that a questionnaire regarding transfer policy and the need for a grievance committee were mere extensions of plaintiff's dispute over her transfer and personal grievance against defendant); *Martolf v. Christie*, No. 12-1018, 2012 WL 5208512, at *3 (W.D. Pa. Oct. 19, 2012) ("a [c]omplaint must show that a Petition in question

concerns a matter beyond the employment context. The right of a public employee under the "Petition Clause" is not a right to transform everyday employment disputes into matters for constitutional litigation in the federal courts"). Plaintiffs' lawsuit is not about the alleged misconduct of Defendants in regards to protecting the public's safety. It is a personal dispute between Plaintiffs and Defendants regarding alleged misconduct regarding the administration of a promotional exam.

Because the Court finds that Plaintiffs' lawsuit in *Kaminski I* does not involve a matter of public concern to warrant the protections under the First Amendment, the Court will not analyze the more fact-intensive prongs of the First Amendment retaliation claim, *i.e.*, adverse action and causation. The Court's holding that Plaintiffs' lawsuit did not address a matter of public concern, taken alone, is dispositive and Plaintiffs' First Amendment retaliation claim cannot survive summary judgment scrutiny. *See Houston v. Twp. of Randolph*, 934 F. Supp. 2d 711, 728 (D.N.J. 2013).

## V.   Conclusion[17]

For the reasons set forth above, Defendants' Motions for Summary Judgment in *Kaminski I* and *Kaminski II* are GRANTED. An order consistent with this Opinion will be entered.


_____
    s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE


DATED: December 31, 2013

---

[17] Because the Court has granted Defendants' motions for summary judgment, it does not reach the issues of qualified immunity, punitive damages, or municipal liability.